UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KINDER MORGAN CONTRACTING SERVICES LLC,<br>    Plaintiff | |
| VS. | Civil Action No. _____ |
| U. N. I. ENGINEERING, INC.,<br>    Defendant | |

# COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Comes now Kinder Morgan Contracting Services LLC, a limited liability company chartered and existing under the laws of the State of Delaware and qualified to do business in Texas, hereinafter called Plaintiff, and files its Complaint complaining of U. N. I. Engineering Inc., a corporation chartered and existing under the laws of the State of New Jersey, hereinafter called Defendant, and for cause of action respectfully represents:

## Jurisdiction

1. The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a)(1), diversity of citizenship. Plaintiff is a citizen of the state of Delaware, in which it was incorporated, and has its principal place of business at 1001 Louisiana Street, Houston, Texas 77002. Defendant is a citizen of the State of New Jersey, in which it was incorporated, and has its principal place of business at 156 Stockton Street, Hightstown, New Jersey 08520. The amount in controversy exceeds the sum or value of $75,000.00.

2. The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a)(1), citizens of different states.

Complaint – Page 1

## Venue

3.	Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Plaintiff has its principal place of business in this District and because the written Master Services Agreement between Plaintiff and Defendant contains a forum selection clause by which the Plaintiff and Defendant expressly agreed that any litigation arising from or related to the agreement shall be brought in a court sitting in Harris County, Texas.

## Summons

4.	U. N. I. Engineering Inc. may be served with summons and a copy of the Complaint by serving its President, Edward J. Sapp, or its Secretary, Justin Sapp, at 156 Stockton St., Hightstown, New Jersey, 08520, or by serving its Registered Agent, Corporation Service Company, at its Registered Office, 1201 Hays Street, Tallahassee, Florida 32301-2525.

## Parties

5.	Plaintiff, Kinder Morgan Contracting Services LLC, is a subsidiary of Kinder Morgan, Inc., one of the largest energy infrastructure companies in North America.  Kinder Morgan, Inc. owns and operates approximately 85,000 miles of pipelines and 185 terminals.  Shares of Kinder Morgan, Inc. are publicly traded (NYSE:KMI).

6.	The business of the Plaintiff, Kinder Morgan Contracting Services LLC, is to contract for providers of services to Kinder Morgan's pipelines and terminal facilities.

7.	Defendant U. N. I. Engineering, Inc. is a consulting engineering firm which specializes in servicing the needs of the petro-chemical industry and provides customized engineering solutions to customers throughout the United States and in the world, including environmental services.  Among other services, U. N. I. Engineering, Inc. offers owners and operators of petroleum, chemical and municipal storage facilities a storage tank inspection

service.  The management team for this division of U. N. I. Engineering is comprised of professional engineers, senior NDE Level II engineers, API-653 Certified Tank inspectors, and Pennsylvania DER Certified Installers/Inspectors.  U. N. I. Engineering represents that its standard procedures include visual inspection, ultrasonic thickness readings, corrosion depth measurement, elevation readings, and establishing benchmarks for future inspections.

**Facts**

8. On or about January 14, 2019, Plaintiff and Defendant signed and entered into a written Master Services Agreement, by the terms of which Defendant promised and agreed to provide engineering and inspection services with respect to Kinder Morgan's storage tanks, pipelines, and other equipment, for a term of five years.

9. By the terms of the Master Services Agreement, Defendant represented, promised and agreed that Defendant's work shall be free from defects in design and workmanship and the work shall comply with all aspects of applicable law, and Defendant promised to indemnify and hold the Plaintiff harmless from any claim, damage, liability, loss or expense, including attorney's fees, resulting from or arising out of Defendant's failure to comply with its warranty obligations.

10. Pursuant to the Master Services Agreement, Defendant undertook to inspect Kinder Morgan's petroleum storage tanks at Kinder Morgan's Point Breeze Facility, Philadelphia, Pennsylvania.  As part of the work, Defendant conducted an internal inspection of tank number 5, which was empty and out of service at the time of the Defendant's inspection. Defendant represented that Defendant's inspection of tank number 5 included a magnetic flux examination of the bottom plates to indicate if there were any underside corrosion or topside corrosion, a B-scan inspection of fifteen random 12" square spots around the bottom to indicate

if there was any underside corrosion, ultrasonic thickness readings on each bottom plate, and a settlement survey of the inside of the tank to measure if any settlement occurred.

11.     Defendants inspection of tank number 5 found six areas of underside corrosion which needed to have patch plates installed over them. These areas were addressed by Plaintiff and subsequently re-inspected by Defendant.  Defendant represented that the tank was repaired and that the tank was free from leaks, and the tank was returned to product service for storing gasoline.

12.     Defendant's inspections of tank number 5 were deficient and defective. Defendant failed to thoroughly inspect the bottom of the tank and failed to find four holes in the bottom of the tank.

13.     When the tank was re-filled with gasoline, approximately nine thousand gallons of gasoline leaked through the holes into the soil beneath the tank in a short period of time, and contaminated the soil beneath the tank and around the tank, and abating the contamination of the soil.

14.     Plaintiff promptly notified Defendant of this failure and demanded that Defendant indemnify Plaintiff from the environmental contamination caused by the release of the gasoline and the costs of remediation of the environmental contamination caused by the release of gasoline from the tank.

### Negligence

15.     Defendant's inspections of tank number 5 were deficient and defective. Defendant failed to thoroughly inspect the bottom of the tank and failed to find four holes in the bottom of the tank.

Complaint – Page 4

16. Defendant's failure to properly inspect the tank and failure to find and to repair the holes in the bottom of the tank were a proximate cause of the release of gasoline from the tank.

17. The release of the gasoline from the tank proximately caused damages and loss to the Plaintiff for reasonable and necessary costs to remediate the environmental hazards caused by the release of the gasoline, including initial investigation and engineering report, interim measures to completely empty the tank and stop further leaks, degassing the tank floor, storm water disposal, groundwater investigation, soil excavation and disposal, long term monitoring, reporting and project management, and for loss of approximately 9,000 gallons of gasoline, in the total amount of approximately $500,000.

**Breach of Warranty**

18. The Master Services Agreement contains express written warranties made by the Defendant to the Plaintiff, which warranties are set out as follows:

15.1 Warranties

15.1.1 SERVICE PROVIDER expressly warrants (i) that the Work shall be free from defects in design and workmanship and shall conform to the terms of the Contract Documents, to approved practices and standards of the industry, and to the specifications, safety standards, drawings, samples or other descriptions upon which this Agreement is based, and (ii) that any goods, materials, parts, products, supplies, and equipment included as part of the Work shall be fit and sufficient for the purpose intended under this Agreement and the applicable Work Directive, merchantable, of new, good material and workmanship, and free from any defects, (iii) that the Work shall comply with all aspects of applicable laws.

15.1.2 The Warranty Period for the warranty set forth in Subsection **15.1.1** shall extend for one (1) year from the date on the Form of Certificate of Final Completion for the Work (the "Warranty Period"). During the Warranty Period SERVICE PROVIDER shall be responsible for and shall pay all costs and expenses to repair, replace, or otherwise restore to like-new condition any portion of the Work which has failed to meet the terms of the warranty set forth in Subsection 15.1.1. Any Work repaired, replaced or otherwise restored under the terms of this Subsection 15.1.2 shall be warranted on like terms for the longer of the Warranty Period or one hundred and eighty (180) days from acceptance of such report, replacement or restoration.

15.1.3 SERVICE PROVIDER shall indemnify and hold COMPANY INDEMNITEES harmless for any claim, damage, liability, loss or expense (including attorney's

Complaint – Page 5

> fees) resulting from or arising out of SERVICE PROVIDER'S failure to comply with its warranty obligations under Section **15.0**.
>
> 15.1.4 If, after notification of a warranty defect, SERVICE PROVIDER shall unreasonably delay commencing, continuing or completing the remediation of such defect in accordance with the schedule acceptable to COMPANY, then COMPANY may correct such defect and SERVICE PROVIDER shall be liable for all reasonable costs, charges and expenses incurred by COMPANY in connection with such repair of replacement and shall pay to COMPANY an amount equal to such costs, charges and expenses upon receipt of invoices from the COMPANY.
>
> 15.1.5 SERVICE PROVIDER shall use reasonable efforts to obtain standard vendor warranties for the benefit of SERVICE PROVIDER and COMPANY for all goods, materials and equipment with warranty periods equal to or longer than the Warranty Period and on terms as provided for in this Section 15.0. If such warranties extend beyond the Warranty Period, then they shall be transferred to COMPANY at the end of the Warranty Period and SERVICE PROVIDER shall act as liaison for COMPANY with such vendors in prosecuting any warranty claims provided that SERVICE PROVIDER shall not be obligated to provide any warranties beyond the Warranty Period.

Section 15.0, page 35, of the Master Services Agreement.

19. Defendant's failure to properly inspect the tank and failure to find the holes in the bottom of the tank were a breach of the warranties of the Master Services Agreement, and were a proximate cause of the release of gasoline from the tank.

20. The release of the gasoline from the tank proximately caused damages and loss to the Plaintiff for reasonable and necessary costs to remediate the environmental hazards caused by the release of the gasoline, including initial investigation and engineering report, interim measures to completely empty the tank and stop further leaks, degassing the tank floor, storm water disposal, groundwater investigation, soil excavation and disposal, long term monitoring, reporting and project management, and for loss of approximately 9,000 gallons of gasoline, in the total amount of approximately $500,000.

## Attorney's Fees

21. Pursuant to the Master Services Agreement, Defendant promised to indemnify and hold the Plaintiff harmless from any claim, damage, liability, loss or expense, including

attorney's fees, resulting from or arising out of Defendant's failure to comply with its warranty obligations and other acts or omissions of the Defendant.  (Section 7.1, page 16 of the Master Services Agreement).

22. The Master Services Agreement contains a Texas choice of law clause and a Texas forum selection clause (Section 13.5.1, page 33).

23. Pursuant to Texas Civil Practice & Remedies Code §38.001(8), Plaintiff may recover reasonable attorney's fees from Defendant incurred for Defendants' breach of its contractual warranties and breach of the Master Services Agreement.

24. Plaintiff presented is claim to Defendant, and payment for the just amount owed was not tendered before the expiration of thirty days after the claim was presented.

25. Therefore, Plaintiff is entitled to recover its reasonable attorney's fees for prosecution of this lawsuit.  A reasonable attorney's fee for the Plaintiff is the sum of at least $50,000.

## Waiver of Trial by Jury

26. Plaintiff and Defendant each irrevocably waived any and all right to trial by jury in any proceeding arising out of or relating to the Master Services Agreement.  This waiver is contained in Section 13.6, page 33 of the Master Services Agreement or services performed pursuant to the Master Services Agreement.

## Conditions Precedent

27. All conditions precedent to Plaintiff's right of recovery have occurred or have been performed.

**Prayer**

Wherefore, premises considered, Plaintiff prays that Defendant be summoned to appear and file an answer herein, and on final hearing or trial hereof, that Plaintiff, Kinder Morgan Contracting Services LLC, have and recover of and from Defendant, U. N. I. Engineering Inc., judgment for Plaintiff's actual damages in the amount of approximately $500,000, reasonable attorney's fees, interest as allowed by law, and all costs of court, and for such other and further relief to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

*/s/ John Mayer*

John Mayer
Attorney in Charge
Texas Bar Number 13274500
Southern District Number 50292
Ross, Banks, May, Cron & Cavin, P.C.
7700 San Felipe, Suite 550
Houston, Texas 77063
Phone 713-626-1200
Fax 713-623-6014
Email jmayer@rossbanks.com
Attorney for Plaintiff